Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1663 | **DATE** | 1/8/2002 |
| **CASE TITLE** | ELMER SANGLAP vs. LASALLE BANK, FSB | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Opinion And Order. It is therefore ordered that judgment be entered in favor of defendant, LaSalle Bank, on plaintiff's American with Disabilities claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 1 1 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | 80 |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |


DOCKETED
JAN 1 1 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELMER SANGLAP,

    Plaintiff,

v.

LASALLE BANK, FSB,

    Defendant.

No. 00 C 1663

Judge John W. Darrah

## OPINION AND ORDER

### PROCEDURAL HISTORY

Plaintiff, Elmer Sanglap (Sanglap), brings this action against defendant, LaSalle Bank (LaSalle), under the Americans with Disabilities Act (ADA) (42 U.S.C. § 12182), seeking injunctive relief. A jury trial on plaintiff's intentional infliction of emotional distress claim was held on October 10, 11, 15, and 16, 2001. At the close of plaintiff's jury trial, the parties presented additional evidence as to plaintiff's ADA claim.

This matter now comes before the Court following the presentation of evidence. The Court has considered the evidence, including the testimony of witnesses and exhibits, and has further considered the written arguments of counsel for the parties and the authority cited therein.

### UNDISPUTED FACTS

Sanglap is a former customer of LaSalle and frequented its Old Orchard office. Plaintiff has suffered from petite mal seizures due to epilepsy since childhood. Dennis Cloud (Cloud) was the branch manager of the Old Orchard office from approximately 1993 to 1998, including the period



of January 1998 through March 20, 1998.

## CONCLUSIONS OF LAW

The court has federal question jurisdiction over the plaintiff's claim (28 U.S.C. § 1331 and 1343(a)(4)), and venue is proper pursuant to 28 U.S.C. § 1391(b) and (c). Defendant is subject to the ADA under 42 U.S.C. § 12182.

The purpose of the ADA is, in part, to provide "a clear and comprehensive national mandate for the elimination of discrimination ** and to provide clear, strong, consistent, enforceable standards addressing discrimination ***." 42 U.S.C. § 12101(b)(1) and (2). 42 U.S.C. § 12182(a) prohibits an entity covered by the ADA from discriminating against a person with a disability by refusing reasonable accommodations for the disability.

A plaintiff must prove his claims under Title III of the ADA either through direct or indirect evidence of discrimination. *Rotham v. Emory Univ.*, 123 F.3d 446, 451 (7th Cir. 1997) (*Rotham*). Direct evidence of discrimination is evidence that a person can interpret as an acknowledgment of the accused's discriminatory intent. *Rotham*, 123 F.3d at 451.

To prove discrimination under the indirect method, a plaintiff must prove that: (1) he is disabled within the meaning of the ADA, (2) he suffered an adverse action, and (3) the circumstances surrounding the adverse action indicate that it is more likely than not that his disability was the reason for the adverse act. *See Lawson v. CSX Trans., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001) (*Lawson*). If the plaintiff prevails on these three elements, the defendant must demonstrate a lawful, nondiscriminatory reason for its action. If the defendant does so, the plaintiff must prove that the proffered reason is actually a pretext for discrimination. *Lawson*, 245 F.3d at 922.

The ADA defines "disability" as:

2

a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; b) a record of such an impairment; or c) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

The determination of whether a person has a disability under the ADA is made on an individualized case-by-case basis. *Bryne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992). This determination is made through a three-step process: (1) whether the individual suffers from a "physical or mental impairment", (2) whether the life activity on which the individual relies upon is a "major life" activity, and (3) whether the impairment "substantially limits" that major life activity. See *Bragdon v. Abbott*, 524 U.S. 624, 531, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998) (*Bragdon*).

The ADA authorizes the Equal Employment Opportunity Commission (EEOC) to issue regulations to carry out Subchapter I of the ADA (42 U.S.C. § 12116) and the Attorney General (Department of Justice or DOJ) to issue regulations to carry out the provisions of Subchapter III of the ADA (42 U.S.C. §12186(b)). The DOJ defines the phrase "physical or mental impairment" as "[a]ny mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 28 C.F.R. §35.104 (1999). Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, learning, and working. This list is illustrative, not exhaustive. *See Bragdon*, 524 U.S. at 638-39, 118 S. Ct. 2196, 141 L. Ed. 2d 540; 45 C.F.R. § 84.3.(j)(2)(ii) (1999).

The ADA regulations define "substantially limited" as: "[s]ignificantly restricted to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general

population can perform that same major life activity." 29 C.F.R. 1630.2(j)(1)(ii) (1999).

Three factors are analyzed for determining whether a person's impairment substantially limits a major life activity: (1) the nature and severity of the impairment, (2) the duration of the impairment, and (3) the permanent or long-term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2); *Furnish v. SVY Sys., Inc.*, 270 F.3d 445, 450 (7th Cir. 2001). The positive and negative effects of any corrective measures must also be taken into account when determining whether a person is substantially limited in a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999).

## FINDINGS OF FACT

1. Epilepsy is a physical impairment.

2. Plaintiff's epilepsy impairs the major life activities of performing manual tasks, walking, seeing, hearing, and speaking.

3. Plaintiff has a history of experiencing petite mal or simple seizures.

4. Plaintiff reported, in late 1996, that he experienced approximately four seizures a year.

5. Plaintiff's seizures last one to two minutes.

6. During a seizure, plaintiff is conscious, not communicative, and experiences rapid eye movement.

7. Following a seizure, plaintiff has a postictal period of approximately five minutes in which he is disorientated.

8. Plaintiff's seizures can be controlled through medication, diet, and proper rest.

9. Plaintiff has reported that he does not always take his medicine and/or take his

medication at the correct time.

10. Plaintiff has experienced seizures when he does not properly take his medicine, eat properly, or is under stress.

11. Plaintiff's physician informed plaintiff that he could drive an automobile after he did not have a seizure for a three-month period. Plaintiff voluntarily let his Illinois driver's license lapse.

12. Plaintiff's epilepsy does not substantially limit a major life activity because of the nature and severity of the epilepsy, its short duration, and the ability of plaintiff to control the epilepsy through medication, diet, and proper rest.

13. Defendant's action of closing plaintiff's account on March 20, 1998, constituted an adverse action.

14. Plaintiff did not inform LaSalle personnel at the Old Orchard office that he suffered from epilepsy.

15. LaSalle personnel, including Cloud, were not aware that plaintiff suffered from epilepsy.

16. Plaintiff suffers from a condition that is difficult to recognize as a seizure.

17. Cloud closed plaintiff's account after observing or being informed of two previous incidents in which plaintiff made loud noises, including stating, "No, No", while in the bank. When asked if he was "OK" by LaSalle personnel, plaintiff indicated he was "fine" and finished his banking transaction without further incident.

18. On February 27, 1998, Cloud observed plaintiff, unresponsive, on the floor of the bank. Cloud called 911, and emergency personnel took plaintiff to the hospital.

19. Cloud made several attempts, telephonically and through letters, to talk with plaintiff to determine the cause of the behavior in the bank; plaintiff did not respond to such attempts.

20. On March 20, 1998, plaintiff was unresponsive when Cloud approached him to discuss the present actions by the plaintiff; plaintiff was unresponsive.

21. Cloud closed plaintiff's account because of plaintiff's actions in the bank that he reasonably believed were disruptive and posed a possible threat to the safety of bank personnel and other customers.

22. On March 21, 2001, Cloud learned for the first time, through plaintiff's brother, Ronald Sanglap, that plaintiff suffered from epilepsy.

23. Upon learning of plaintiff's epilepsy, Cloud offered to reopen plaintiff's account.

24. Plaintiff's brother informed Cloud that plaintiff would not be reopening his account.

25. Cloud made additional attempts to communicate with plaintiff to offer to reopen the account.

26. Plaintiff has failed to prove that the circumstances surrounding the closing of plaintiff's account indicate that it is more likely than not that plaintiff's epilepsy was the reason Cloud closed plaintiff's account.

27. Plaintiff has failed to prove that Cloud's proffered reason for closing the account was actually a pretext for discrimination.

28. Plaintiff informed his treating physician, Doctor Robert Wolf, on March 12, 2001, that defendant accidently closed his account.

29. Plaintiff has failed to prove that Cloud intentionally discriminated against him because of his epilepsy.

IT IS THEREFORE ORDERED that judgment be entered in favor of defendant, LASALLE BANK, on plaintiff's American with Disabilities claim.

Dated: January 8, 2000

JOHN W. DARRAH
United States District Judge