Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1663 | **DATE** | 1/8/2002 |
| **CASE TITLE** | ELMER T. SANGLAP vs. LASALLE BANK, FSB | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. LaSalle's renewed motion for judgment as a matter of law is granted. LaSalle's alternative motion for a new trial is denied as moot. The judgment entered in favor of Sanglap on 10/16/01, is vacated; and judgment is entered for defendant on plaintiff's intentional infliction of emotional distress claim.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 11 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 82 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELMER T. SANGLAP,           )
                            )
        Plaintiff,          )
                            )
                            )
    v.                      )   No. 00 CV 1663
                            )
                            )   Hon. John W. Darrah
LASALLE BANK, FSB,          )
                            )
        Defendant.          )
                            )

DOCKETED
JAN 1 1 2002

## MEMORANDUM OPINION AND ORDER

On October 16, 2001, a jury returned a verdict in favor of plaintiff, Elmer Sanglap (Sanglap). The jury awarded Sanglap $80,000 on his intentional infliction of emotional distress claim. Presently before the Court is defendant's, LaSalle Bank's (LaSalle), Renewed Motion for Judgment as a Matter of Law or in the Alternative For a New Trial.

A court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000) (*Reeves*). In entertaining a motion for judgment as a matter of law, the court reviews all of the evidence in the record and draws all reasonable inferences in favor of the nonmoving party. The court does not make credibility determinations or weigh the evidence. *Reeves*, 530 U.S. at 151.

LaSalle argues that it is entitled to judgment as a matter of law because Sanglap failed to establish any of the elements of his intentional infliction of emotional distress claim.

To succeed on a claim of intentional infliction of emotional distress, a plaintiff must

establish: 1) the defendant's conduct was extreme and outrageous; 2) the defendant either intended that his conduct would cause severe emotional distress or knew that high probability existed that his conduct would cause severe emotional distress; and 3) the defendant's conduct actually caused severe emotional distress to the plaintiff. *See Doe v. Calumet City*, 161 Ill.2d 374, 392, 641 N.E.2d 498, 506 (1994).

As to the first element, conduct is extreme and outrageous in character where "recitation of the facts to an average member of the community would arouse in him resentment against the actor, and lead him to exclaim 'Outrageous!'" *Doe*, 641 N.E.2d at 507 (quoting Restatement (Second) of Torts § 46 cmt. d at 73 (1965)). Conduct is considered extreme and outrageous only if 'the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency....' *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997) (*Van Stan*) (citations omitted). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not rise to extreme and outrageous conduct. *Public Fin. Corp. v. Davis*, 66 Ill.2d 85, 90 (1977) (*Davis*). A defendant's awareness that the plaintiff is susceptible to emotional distress is also a factor in determining whether conduct is extreme and outrageous. However, the defendant's knowledge of such susceptibility does not alter the objective standard by which a court determines whether conduct is outrageous. *Van Stan*, 125 F.3d at 569.

In *Van Stan*, the Seventh Circuit held that the District Court erred in not rendering judgment as a matter of law in defendant's favor following a jury's verdict in favor of plaintiff on plaintiff's intentional infliction of emotional distress claim. *Van Stan*, 125 F.3d at 569-70. The court found that, viewing all the evidence in the light most favorable to the plaintiff, defendant's conduct -- which included knowledge by defendant that plaintiff suffered from a bipolar disorder, that

2

defendant fired plaintiff because his disorder did not allow him to work more than fifty hours, telephoning plaintiff at home while on vacation to inform him that he was terminated, and falsely stating that his reason for termination was low productivity -- did not exceed all possible bounds of decency and did not constitute extreme and outrageous conduct as a matter of law. *Van Stan*, 125 F.3d at 569.

In contrast, the evidence presented in the instant case was limited to the following facts. The jury heard testimony that Sanglap was a long-term customer of the Old Orchard LaSalle Bank and that workers at the bank, including Dennis Cloud (Cloud), the bank manager, had witnessed Sanglap exhibit odd behavior on two occasions while in the bank in January and February 1998. On February 28, 1998, bank personnel saw Sanglap fall to the floor, moaning, and crying for help. Cloud telephoned 911, and Sanglap was transported to the hospital.

On March 20, 1998, Sanglap had another "episode" at the bank. At trial, Cloud testified that he observed Sanglap stand upright at a table and say loudly, "No. No". Sanglap attempted to impeach Cloud's testimony by offering Cloud's previous affidavit in which Cloud averred that he observed Sanglap with his head down on the table and moaning. Ten to fifteen minutes later, Cloud observed Sanglap at a teller window, approached him, and informed him that he was closing his account because there seemed to be a problem when he came into the bank. Sanglap did not respond to Cloud. Cloud instructed the teller to close Sanglap's account. The teller closed the account and gave Sanglap a check. This was the only account Cloud had ever closed at LaSalle. Cloud testified that he closed the account because Sanglap had repeatedly caused commotion in the bank and was concerned for the safety of the workers and other customers.

Sanglap never informed anyone at LaSalle that he suffered from epilepsy or that he had

3

seizures. Sanglap does not recall the events of March 20th at the bank except for hearing male or female voices, standing in line, someone stamping his account, and someone telling him to go to another bank.

Sanglap contends the above conduct constitutes extreme and outrageous conduct because Cloud was aware that Sanglap suffered from some type of illness, Sanglap was a regular, long-standing customer, Sanglap's conduct did not cause a commotion in the bank, and Cloud forced Sanglap out of the bank while he was still semi-conscious. Assuming the jury based its findings on plaintiff's contention, Cloud's conduct of closing Sanglap's account based on the totality of the facts presented at trial cannot be said to be legally outrageous in character and so extreme in degree as to go beyond all bounds of decency. Cloud's conduct, while not condoned, did not rise to the level of extreme and outrageous conduct as a matter of law, and LaSalle is entitled to judgment in its favor.

As clearly demonstrated by the testimony, when it was evident Sanglap needed medical treatment, Cloud obtained such treatment. The other incidents, including March 20th, were distinctly different when compared to the severity of the February 28th incident in which Sanglap lay on the floor and Cloud called 911. Furthermore, the testimony established that, after leaving the bank on March 20th, Sanglap did not seek any type of medical treatment and continued on with his day.

Sanglap also failed to establish another material element, *i.e.*, that Cloud intended to cause severe emotional distress or knew that there was a high probability of inflicting severe emotional distress.

Sanglap argues that the jury could have found that Cloud knew of Sanglap's particular susceptibility to emotional distress and that such knowledge is evidence of his intent to cause severe emotional distress. Based on this same knowledge, Cloud also should have known that there was

4

high probability of causing severe emotional distress.

There was no evidence to support plaintiff's theory. Cloud testified that he closed Sanglap's account because of the disturbances and to protect the workers and customers of the bank. However, even if the jury did not believe this testimony, Sanglap offered absolutely no evidence at trial to establish that anyone at the bank, including Cloud, knew, prior to closing his account, that Sanglap suffered from an illness or that, because of this illness, closing his account would cause severe emotional distress or that Cloud knew that there was a high probability that this action would cause severe emotional distress.

As to the third element, to sustain a claim of intentional infliction of emotional distress, the emotional distress must be severe. *Davis*, 66 Ill.2d at 90. Emotional distress such as fright, horror, grief, shame, humiliation, and worry alone do not constitute severe emotional distress. The emotional distress must be so severe that no reasonable person could be expected to endure it. The duration and intensity are factors considered in determining the severity of the emotional distress. *Davis*, 66 Ill.2d at 90.

At trial, Sanglap testified that he felt angry, helpless, and had withdrew from his already limited social life. Sanglap's brother testified that, since the closing of the account, Sanglap's confidence level had dropped. However, Sanglap did not seek any type of therapy or treatment of any kind after the account was closed.

Sanglap also offered testimony by a psychologist, Miasha Hamilton-Bennett (Hamilton-Bennett), whom he did not see until three-and-a-half years after his account was closed. Hamilton-Bennett testified that she believed that Sanglap suffered from schizoid personality disorder and depression prior to the closing of the account and that these conditions were aggravated by the

5

closing of the account. She did not administer any tests, and she had no way of knowing how much the closing of the account exacerbated Sanglap's pre-existing condition.

No competent evidence was offered at trial to establish that LaSalle's conduct caused severe emotional distress upon Sanglap as a matter of law. While Sanglap offered testimony that he suffered from emotional distress, *i.e.*, he felt that he had been excluded from the human race, he was angry and felt helpless, he withdrew from his "already limited social life", and that his pre-existing schizoid personality disorder and depression was aggravated, such testimony does not legally constitute emotional distress that rises to the level so severe that no reasonable person could be expected to endure it. *See Davis*, 66 Ill.2d at 90.

For the reasons stated above, LaSalle's Renewed Motion for Judgment as a Matter of Law is granted. LaSalle's alternative motion for a new trial is denied as moot. The judgment entered in favor of Sanglap on October 16, 2001, is vacated; and judgment is entered for defendant on plaintiff's intentional infliction of emotional distress claim.

Dated: January 8, 2001

JOHN W. DARRAH
United States District Judge

6